Julie Trester
Arizona Bar No. 013107
E-mail: jtrester@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: 312-474-7960
Telefax: 312-878-2020

Samuel A. Lewis
Florida Bar No. 55360 (*pro hac vice* to be filed)
E-mail: slewis@cozen.com
200 South Biscayne Boulevard, Suite 3000
Miami, Florida 33131
Telephone: 305-704-5940
Telefax: 305-704-5955

Attorneys for Plaintiff, Media Trademark and Licensing, Ltd.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Media Trademark and Licensing, Ltd., a foreign corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>LONDONBLOCKCHAIN.COM,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff, Media Trademark and Licensing, Ltd. ("MTL"), sues Defendant, LONDONBLOCKCHAIN.COM (the "Domain Name"), and alleges:

**The Parties, Jurisdiction And Venue**

1. This is an action for cybersquatting in violation of federal law pursuant to 15 U.S.C. §1125(d). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

2. This is also an in rem proceeding directed against an internet domain name pursuant to 15 U.S.C. §1125(d)(2)(A). The Domain Name incorporates MTL's federally registered trademark, and MTL's efforts to locate the registrant of the Domain Name have been unsuccessful due to the registrant's efforts to actively conceal his or her identity.

3. Plaintiff, MTL, is a company organized and existing under the laws of Antigua & Barbuda.

4. Domain Name is an Internet domain name registered to an unknown person or persons through the domain name registrar GoDaddy.com, LLC ("GoDaddy"). The person or persons who registered the Domain Name ("Registrants") have used a privacy service to actively conceal their identity. This Court has in rem jurisdiction over the Domain Name because GoDaddy, the domain name registrar, is located in Maricopa County, Arizona, and because MTL cannot otherwise exercise jurisdiction over the unknown Registrants.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 and 15 U.S.C. §1125(d)(2)(A) as GoDaddy maintains an office in this District.

**Common Factual Allegations**

6. MTL is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "London Blockchain Mark"):

| Trademark | Class / Goods |
|---|---|
| **LONDON BLOCKCHAIN CONFERENCE** Registration No. 7,583,478, registered December 3, 2024 | IC 035 - Arranging and conducting competitions for businesses to compete for seed capital to finance business activities in the field of cryptocurrency, blockchain and distributed computing technology.<br><br>IC 041 - Educational services, namely, conducting classes, presentations, seminars, conferences, and workshops in the field of digital currency, digital coins, cryptocurrency, blockchain and distributed computing technology and management and distribution of course and educational materials in connection therewith; Organizing, arranging, and conducting educational |

2

| Trademark | Class / Goods |
|---|---|
|  | conferences, seminars, festivals, symposia, educational conventions, and professional training events in the field of digital currency, digital coins, cryptocurrency, blockchain and distributed computing technology and blockchain software; Operation of a website providing information and news in the field of current events relating to digital currency, digital coins, cryptocurrency, blockchain, and distributed computing technology.<br><br>IC 042 - Online technology information and consultation in the fields of digital currency, digital coins, cryptocurrency, blockchain, and distributed computing technology through mobile applications and the internet; operation of a website providing information, news, analysis and commentary regarding digital currency, digital coins, cryptocurrency, blockchain, and distributed computing technology; computer software development, computer programming and maintenance of computer software for cryptocurrency mining and blockchain purposes; Technology consulting services in the field of digital currency, digital coins, and cryptocurrency, blockchain and distributed computing technology; Providing online non downloadable software for use in generating, exchanging, trading, updating, clearing, settlement, custody, investment and processing of digital currencies and cryptocurrencies; Software as a service (SaaS) services featuring software for financial and advisory services for generating, exchanging, trading, updating, clearing, settlement, custody, investment and processing of digital currencies and cryptocurrencies; Providing temporary use of nondownloadable computer software that allows users to send, receive, store, and safeguard digital currency; Providing a secure, web-based service featuring technology that enables users to remotely access, send, receive, store, and manage digital currency; Application service provider (ASP) services featuring application programming interface (API) software for integration of financial transactions into websites and mobile applications; Data encryption services; Application service provider (ASP) featuring software for accessing, sending, receiving, storing, and managing cryptocurrency transactions using blockchain technology; Application service provider (ASP), namely, hosting computer software applications of |

3

| Trademark | Class / Goods |
|---|---|
|  | others; Application service provider featuring application programming interface (API) software for interaction with cryptocurrency and blockchain; Cloud computing featuring software for use in the cryptocurrency and blockchain market for accessing, sending, receiving, storing, and managing cryptocurrency; Collaborative computer programming for others in the nature of hackathons; Design and development of computer software and hardware in the field of cryptocurrency mining and blockchain; Platform as a service (PAAS) featuring computer software platforms for managing and validating cryptocurrency transactions using and blockchain technology; Cryptocurrency mining co-location services, namely, providing facilities for the location of computer hardware for cryptocurrency mining with the equipment of others; Computer services, namely, rental of computer hardware for pooled cryptocurrency mining providing shared facilities for the location of computer hardware for computational processing with the equipment of others, and verification in the nature of authentication of data in the field of financial transactions using blockchain technology for cryptocurrency mining; Computer services, namely, cloud mining services for providing shared computational processing in the nature of providing facilities for the location of computer hardware for cryptocurrency mining with the equipment of others and verification in the nature of user authentication services using blockchain technology for cryptocurrency transactions for cryptocurrency mining; Computer data center services, namely, providing and managing shared computing hardware and software in the nature of rental of computer hardware and software for the purpose of mining cryptocurrency; computer services, namely, creating online communities for registered users to participate in discussions, provide and obtain feedback from other registered users, form virtual communities and engage in social networking in the field of digital currency, digital coins, cryptocurrency, blockchain and distributed computing technology. |

7.   A copy of the Certificate of Registration for the London Blockchain Mark is attached as Exhibit 1.

4

8. The London Blockchain Mark has been used in interstate commerce continuously since 2022 to identify and distinguish MTL's services.

9. The London Blockchain Mark has not been assigned or licensed to the Registrants.

10. MTL is also the owner of common law rights relating to the London Blockchain Mark, and is the owner of other related trademark registrations issued in the United States and elsewhere.

11. MTL expends substantial resources developing and otherwise promoting the London Blockchain Mark. For example, MTL promotes the London Blockchain Mark by hosting programs in various locations around the world. In addition to its flagship event, which can been attended virtually from anywhere in the world with access to the Internet, MTL has expanded its services to include webinars and mini one-day summits throughout the year, and all of these programs are attended by people throughout the world.

12. A considerable number of people from the U.S. attend MTL's programs, and given the interest from U.S.-based attendees, MTL has invested significant sums advertising with the London Blockchain Mark in the U.S.

13. The London Blockchain Mark is also used and promoted through authorized websites such as LondonBlockchain.net.

14. As a result of MTL's efforts, members of the consuming public readily identify services associated with the London Blockchain Mark as being of a high quality and sponsored and/or approved by MTL.

15. Accordingly, the London Blockchain Mark has achieved secondary meaning as an identifier of high-quality services and goods. Second meaning is also presumed by virtue of the federal trademark registrations issued in connection with the London Blockchain Mark.

**Registrants' Infringing Activities**

16.     At all times relevant to this action, and upon information and belief, Registrants have had full knowledge of MTL's ownership of the London Blockchain Mark.

17.     On February 24, 2025, MTL commenced an action in the U.S. District Court for the Northern District of California against the entity that was, at the time, the registrant of the Domain Name.  The summons and complaint in that action was served on the defendant/registrant on March 4, 2025.  The following day, the defendant/registrant transferred the Domain Name to the current Registrants.  Upon information and belief, the Registrants were informed of the action prior to the time of the transfer of the Domain Name.

18.     Upon information and belief, the Registrants have had full knowledge of MTL's ownership of the London Blockchain Mark at all times relevant to this action.

19.     The Domain Name itself incorporates the London Blockchain Mark.

20.     Upon information and belief, the Registrants have offered to transfer, sell, or otherwise assign the Domain Name for financial gain without having used, or having an intent to use, the Domain Name in connection with the bona fide offering of any goods or services.

21.     Upon information and belief, the Registrants have also permitted efty.com to solicit offers to purchase the Domain Name.

22.     On or about March 5, 2025, GoDaddy became the current Registrar of the Domain Name.

23.     MTL has retained the undersigned law firm to represent it in this action and have agreed to pay undersigned counsel reasonable attorney's fees for its services.

**Count I:  Cybersquatting in violation of 15 U.S.C. §1125(d)**

24.     MTL repeats the allegations in paragraphs 1 through 23 in support of this claim.

25.     At all times relevant, MTL has been and still the owner of all right, title and interest in and to the London Blockchain Mark.

26. Registrants have acted with the bad faith intent to profit from the London Blockchain Mark and the goodwill associated with the London Blockchain Mark.

27. Registrants have no intellectual property rights in or to the London Blockchain Mark.

28. The Domain Name is identical to, confusingly similar to, or dilutive of, the London Blockchain Mark. Indeed, the Domain Name incorporates verbatim the London Blockchain Mark.

29. The Registrants' wrongful conduct was done with knowledge and constitutes a willful violation of MTL's rights in the London Blockchain Mark. At a minimum, the Registrants' conduct constitutes reckless disregard for and willful blindness to MTL's rights.

30. The Registrants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

31. MTL has no adequate remedy at law.

32. The Registrants' actions have caused, and unless enjoined, will continue to cause harm, damage and irreparable injury to MTL for which there is no adequate remedy at law.

**Prayer for Relief**

WHEREFORE, MTL demands relief as follows:

I. Entry of an Order that those acting in concert or participation with the Registrants who have notice of the injunction as service providers cease hosting, facilitating access to, or providing any supporting service to the Domain Name;

II. Entry of an Order that the top-level domain (TLD) Registry for the Domain Name place the Domain Name on Registry Hold status for the remainder of the registration period for such Domain Name, thus removing it from the TLD zone files linking the Domain Name to IP addresses;

III. Entry of an Order requiring the Registrar, GoDaddy, to transfer the registration for the Domain Name to MTL, and that pending such transfer, suspending and locking down the Domain Name so that it cannot be transferred to any other person or entity;

IV. Entry of an award pursuant to 15 U.S.C. §1117 and of MTL's costs and reasonable attorneys' fees; and

V. Entry of such further relief as the Court may deem just and proper.

DATED: March 10, 2025

Respectfully submitted,

COZEN O'CONNOR

By: _____
Julie Trester
Arizona Bar No. 013107
E-mail: jtrester@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: 312-474-7960
Telefax: 312-878-2020

and

Samuel A. Lewis
*Pro hac vice* to be filed
E-mail: slewis@cozen.com
COZEN O'CONNOR
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3000
Miami, Florida 33131
Telephone: 305-704-5940
Telefax: 305-704-5955

***Attorneys for MTL***